**FILED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**99 AUG -2  PM 4: 08**

**U.S. DISTRICT COURT**
**N.D. OF ALABAMA**

| | |
|---|---|
| **J. L. BAILEY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Civil Action No. CV-98-S-0371-NE** |
| | ) |
| **FLUOR DANIEL, INC.,** | ) **ENTERED** C𝒏 |
| | ) |
| **Defendant.** | ) **AUG 0 2 1999** |

### MEMORANDUM OPINION

Plaintiff, J. L. Bailey, commenced this action on February 17, 1998, alleging he was fired because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Bailey seeks declaratory and injunctive relief, reinstatement, back-pay, front-pay, reasonable value of benefits lost, compensatory and punitive damages, attorney's fees, and costs. The action presently is before this court on defendant's motion for summary judgment.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

57

moving party is entitled to judgment as a matter of law. ..."
(Emphasis added.) The movant bears the initial burden of showing
the court, by reference to materials on file, that no genuine
issues of material fact exist to be decided at trial. *See Celotex
Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.
1991). The moving party discharges this burden by "showing" or
"pointing out" to the court that there is an absence of evidence to
support the non-moving party's case. *Jeffery v. Sarasota White
Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56
permits the movant to discharge this burden with or without
supporting affidavits. *See Celotex,* 477 U.S. at 324, 106 S.Ct. at
2553. When the moving party has discharged its burden, the
non-movant must go beyond the pleadings and designate specific
facts showing there is a genuine issue for trial. *See Jeffery,* 64
F.3d at 593.

In deciding whether the moving party has met its burden, the
court is obligated to draw all inferences from the evidence
presented in the light most favorable to the non-movant and, also,
to resolve all reasonable doubts in that party's favor. *See Spence
v. Zimmerman,* 873 F.2d 256 (11th Cir. 1989). Inferences in favor

2

of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

3

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTS

### A. FDI, and Bailey's Tenure at FDI

J. L. Bailey began work at Fluor Daniel, Inc. ("FDI") on an undisclosed date. Bailey's first position, apparently, was that of a member of the grounds crew, the duties of which included cutting grass. On December 19, 1993, Bailey was reassigned to work in the cutting and baling area. He was a team leader for a few months beginning in September of 1995. He returned to work as a regular employee during December of 1995, and maintained that status until he was terminated on June 16, 1997.[1]

FDI is a full-service global engineering, construction, and maintenance company that performs services for a wide range of clients. The corporation is divided into a variety of operating companies. The FDI project involved in this case is operated in Decatur, Alabama, by the Chemical, Plastics and Fibers Operating

---

[1] The record is not clear regarding whether plaintiff was laid off or fired. Plaintiff characterizes this adverse employment action as a termination, whereas defendant calls it a layoff. Viewing the facts in a light most favorable to plaintiff, and, because defendant has no recall procedure but requires former employees who were laid off to submit an application for a vacancy as any applicant would, this court will consider the undisputed adverse employment action as a termination of plaintiff's employment as opposed to a layoff.

4

Company. As such, defendant FDI is a contractor that provides

maintenance and support services to its sole client in Decatur:

Solutia.[2] For purposes of this case, FDI's primary goal is to

serve that client. (See Plaintiff's deposition, exhibit 10; Koza

affidavit.)

FDI employees in the cutting and baling area work closely with

Solutia. (See, e.g., Plaintiff's deposition, at 142-43.) This

department was a manual operation until December of 1995, when an

automated system became operational. As FDI implemented the new

system, its need for manual labor decreased. Consequently, during

the period lasting from December of 1995 until June 15, 1997 (the

day before Bailey was fired), thirty employees in the cutting and

baling department were laid off. (See Koza affidavit, exhibit B.)

Of these thirty, four employees were in the protected age group,

i.e., forty years of age or older. (See id.) FDI now employs only

one person in the cutting and baling area.

FDI does not have a procedure for recalling employees who have

been laid off. Rather, these former employees must submit an

---

[2] Nothing in the record identifies what type of organization Solutia
(formerly "Monsanto") is, or what type of goods or services that organization
provides.

5

application for a posted, vacant position. (*See*, *e.g.*, Koza affidavit.)

## B. Bailey's Termination

On June 13, 1997, foreman Harold Oliver, Bailey's immediate supervisor, forewarned Bailey he would be laid off. (*See* Plaintiff's deposition, at 65.) Bailey then contacted Jeff Lipscomb, the project superintendent, and received verification of that information. Bailey pointed out that he had more seniority than the other workers in his department. According to Bailey, Lipscomb told him he had been selected because of his age. (*See id.* at 101, 103, 180). Bailey alleges Oliver also told him that he was selected based upon his age, and because Lipscomb wanted a younger work force. (*See* Plaintiff's memorandum of law, at 2.) Both Lipscomb and Oliver admit having had conversations with Bailey during the times alleged, but each denies making any of the foregoing statements. (*See* Oliver affidavit, at p.2; Lipscomb affidavit, ¶ 8, and exhibit B.)

Solutia's supervisor of cutting and baling, Leroy Beard, decided to reduce his number of FDI contract employees by two. On June 13, 1997, Beard identified Bailey and Kevin Ryan, a nineteen-year-old in the department. (*See*, *e.g.*, Beard affidavit, ¶¶ 6, 7;

6

Lipscomb affidavit, ¶ 5.)  Beard informed Lipscomb of his decision and the reasons therefor, which included Bailey's previous complaints about his pay and at least one incident of recalcitrance on the job.  (See id.)  Lipscomb then informed Don Koza, FDI's Services Manager, of Beard's desire to eliminate two positions from the cutting and baling area and his selection of the employees to eliminate.  (See Lipscomb affidavit, ¶ 6; Koza affidavit ¶ 6.) After determining there were no vacancies in other areas, Koza decided to terminate Bailey and Ryan, and did so on June 16, 1997. (See Koza affidavit ¶ 7; Lipscomb affidavit, ¶ 7.)

## C.   Activities Post-Termination

J. L. Bailey filed a charge of age discrimination with the Equal Employment Opportunity Commission on July 22, 1997.  He then obtained employment elsewhere.[3]

Harold Oliver and Bailey interacted socially several times. Bailey alleges that Oliver said he thought Lipscomb would give Bailey his job back if he would drop his lawsuit against FDI.  (See Plaintiff's  deposition,  at  73-74.)    Oliver  denies  this conversation.  (See Oliver affidavit, at p. 2.)  Bailey asserts

---

[3] Neither party provides any further information about Bailey's employment subsequent to the termination at issue, other than the facts that he earned less than $10.25 per hour and that the new position was not a temporary position.

7

Oliver also said Lipscomb would not permit Bailey to return to the FDI facility, and that, when Oliver suggested to Lipscomb that they extend an offer for a vacant position to Bailey, Lipscomb responded "F*** [plaintiff]. He wants to sue us and he's got a lawyer." (Plaintiff's deposition, at 116.) Oliver and Lipscomb deny that any of the above conversations ever took place.[4]

In June of 1998, a vacancy arose in the punching and buttoning room at FDI. Lipscomb informed Koza that Bailey had expressed interest in such position, and Koza, *via* letter of counsel dated June 3, 1998,[5] informed Bailey of the position and urged him to submit an application if he was interested. (*See* Plaintiff's deposition, exhibit 4.) The position was temporary, lasting from six to twelve weeks. Although the pay offered with that position was slightly more than Bailey was earning at his new position, he

---

[4] In fact, FDI points out that Bailey's allegation of being told Lipscomb would not permit him to return to the facility, an allegation made in his memorandum of law in opposition to the motion for summary judgment, is not supported by anything in the record, not even Bailey's deposition. (*See* Defendant's reply brief, at 1.)

Nevertheless, Oliver does admit that, during one of his several social visits to Bailey's home after the termination, he reluctantly agreed with Bailey that the reason FDI selected Bailey for the reduction in force was his age. Oliver contends that he did not yet know that Solutia had identified Bailey for termination from the cutting and baling area and that the conversation in issue (between Bailey and Oliver) occurred after the two had consumed several beers that day. Moreover, Bailey had surreptitiously tape recorded their conversation. (*See* Oliver affidavit, at p. 2.)

[5] This action already was pending, leading FDI to make the offer through its counsel.

8

decided not to apply at FDI because it would have entailed quitting a "permanent" position to apply for a temporary one. Moreover, the work area and shift for the opening at FDI did not appeal to Bailey.

## III. DISCUSSION

In ADEA cases, the plaintiff has the ultimate burden of proving that age was a determinative factor in the employer's adverse employment decision. *See, e.g., Verbraeken v. Westinghouse Electric Corporation*, 881 F.2d 1041, 1045 (11th Cir. 1989). Initially, the plaintiff must establish that age was a determining factor in the employer's decision with direct evidence, circumstantial evidence, or statistical evidence. *See, e.g., Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991).

### A. Direct evidence of discrimination

Direct evidence is evidence which, if believed, proves the existence of a fact in issue without the need of an inference or a presumption. *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require ... an inferential leap between fact and conclusion."); *Merritt v. Dillard Paper Co.*,

9

120 F.2d 1181, 1189 (11th Cir. 1997) (defining direct evidence as
"evidence, which if believed, proves existence of fact in issue
without inference or presumption"); *Clark v. Coats & Clark, Inc.*,
990 F.2d 1217, 1226 (11th Cir. 1992) ("Only the most blatant
remarks, whose intent could only be to discriminate on the basis of
age constitute direct evidence.").

Direct evidence has the greatest probative value.  When a
plaintiff establishes by direct evidence that a contested
employment decision was motivated by a discriminatory animus, the
employer "may avoid a finding of liability only by proving by a
preponderance of the evidence that it would have made the same
decision even if it had not taken the plaintiff's [protected
status] into account." *Price Waterhouse v. Hopkins*, 490 U.S. 228,
258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989); *see also, e.g.*,
*Carter*, 132 F.3d at 641; *Haynes v. W.C. Caye and Co., Inc.*, 52 F.3d
928, 931 n.8 (11th Cir. 1995).  In other words, "defendant must
prove that there was a separate, [non-discriminatory] reason for its
[contested employment decision]." *E.E.O.C. v. Alton Packaging
Corp.*, 901 F.2d 920, 925 (11th Cir. 1990).

> In a direct evidence case, the plaintiff must produce
> direct testimony that the employer acted with
> discriminatory motive, and must convince the trier of
> fact to accept the testimony.  If the plaintiff produces

10

such evidence and the trier of fact believes it, the
defendant must prove by a preponderance of the evidence
that the defendant would have reached the same decision
without the factor proved. In other words, the employer
must prove that even if it had not taken [an
impermissible factor] into account, it would have come to
the same decision.

901 F.2d at 923 (citations omitted).

Thus, the characterization of evidence as direct "dramatically
affects the allocation of the evidentiary burdens." *Carter*, 132
F.3d at 641. "When there is direct evidence that discrimination
was a motivating factor in the challenged employment decision, the
appropriate analysis is different from that employed in a case
where only circumstantial evidence is available." *Trotter v. Board
of Trustees of the University of Alabama*, 91 F.3d 1449, 1453 (11th
Cir. 1996) (citing *Bell v. Birmingham Linen Service*, 715 F.2d 1552,
1556 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385,
81 L.Ed.2d 344 (1984); *Haynes v. W.C. Caye and Co., Inc.*, 52 F.3d
928, 931 (11th Cir. 1995)).

### 1. Statements of decisionmakers directly related to the contested employment action

Statements of decisionmakers directly related to the contested
employment action constitute direct evidence of discrimination.
*See, e.g., Carter*, 132 F.3d at 641 ("[D]irect evidence relates to
actions or statements of an employer reflecting a discriminatory or

11

retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.") (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990) (internal quotation marks omitted)); *Trotter*, 91 F.3d at 1453 ("Statements indicating ... bias on the part of a decisionmaker in an employment setting can constitute direct evidence of ... discrimination in Title VII cases.") (citations omitted); *Bell v. Birmingham Linen Service*, 715 F.2d 1552 (11th Cir. 1983) (plaintiff's supervisor voiced bias to plaintiff at the very moment he rejected plaintiff for promotion), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Thompkins v. Morris Brown College*, 752 F.2d 558, 561, 563-64 (11th Cir. 1985) (statement by decisionmaker that he saw no need for a woman to have a second job constituted direct evidence of discriminatory intent).

## 2. Statements unrelated to decision in dispute, ambiguous statements, and stray remarks in the workplace

On the other hand, statements that do "not relate directly to the decision" in dispute, or "statements that are open to more than one interpretation do not constitute direct evidence of ... discrimination." *Carter*, 132 F.3d at 642; *see also Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996) (statements that could "have more than one possible meaning"

12

are not direct evidence of discrimination). "Only the most blatant remarks, whose intent could only be to discriminate on the basis of [an impermissible factor] constitute direct evidence." *Coats*, 990 F.2d at 1226. Evidence merely suggesting discrimination is not sufficient. *See Earley v. Champion International Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990).

Moreover, "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not "justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804-05 (O'Connor, J., concurring).

For example, in *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990), the employer's general manager (Robert Raymond) allegedly said "if [Alton Packaging] was his company, he wouldn't hire any black people." 901 F.2d at 922. In addition, the production manager (Robert Diesen) allegedly yelled at one black employee "--- ---- it, you people can't do a ------- thing right." *Id.* The Eleventh Circuit held the former statement to be direct evidence of discriminatory intent by a decisionmaker, but

13

the latter nothing more than a "stray remark," "unrelated to the
decisional process itself."

> *Price Waterhouse* does not define direct evidence.
> In her concurrence, however, Justice O'Connor stated that
> "stray remarks in the workplace," "statements by
> nondecisionmakers," and "statements by decisionmakers
> unrelated to the decisional process itself" do not
> "justify requiring the employer to prove that its hiring
> or promotion decisions were based on legitimate
> criteria."  *Price Waterhouse*, 109 S.Ct. at 1804.
> <u>Raymond's statement</u> that if it were his company he would
> not hire blacks does not fall into any of these
> categories.  <u>Raymond</u> was a decisionmaker, and he made the
> remark in reference to hiring. [On the other hand,]
> <u>Diesen's statement</u> is the kind of stray remark
> contemplated by Justice O'Connor, but does not affect the
> outcome.  <u>Raymond's statement</u> constituted direct evidence
> of discrimination which Alton was required to rebut by a
> preponderance of the evidence.  The district court erred
> when it failed to place this burden on Alton.

*Alton Packaging*, 901 F.2d at 924 (emphasis added).

   3.   **Hearsay issues in direct evidence analysis**

        a.   **Statements indicating a person's present state of
             mind as probative of future conduct and Federal
             Rule of Evidence 803(3)**

Evidence of a person's extrajudicial statements is admissible
under Rule 803(3) of the Federal Rules of Evidence as a statement
of a declarant's then existing state of mind.

**Rule 803.  Hearsay Exceptions; Availability of Declarant
Immaterial**

     The following are not excluded by the hearsay rule,
even though the declarant is available as a witness:

14

• • •

    **(3) Then existing mental, emotional, or physical condition.**— A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of [the] declarant's will.

A person's out-of-court declaration of his state of mind may be admissible not only as proof of the person's state of mind at the time the statement was made, but also to show the probability that he committed some subsequent act pursuant to that declared state of mind.

    Even so, the extrajudicial statements of a declarant as to his then existing state of mind cannot be used to implicate, or reflect upon the probable conduct of a third person. *See United States v. Cintolo*, 818 F.2d 980, 1001 (1st Cir.), *cert denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); *see also* H.R. Rep. No. 650, 93d Cong., 1st Sess. (1973) ("[T]he Committee intends that [Rule 803(3)] be construed ... so as to render statements of intent by a declarant admissible <u>only</u> to prove <u>his</u> future conduct, <u>not the future conduct of another person</u>."), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7057, 7087 (emphasis supplied).

15

An informative case is *La Montagne v. American Convenience
Products, Inc.*, 750 F.2d 1405 (7th Cir. 1984). There, plaintiff
sued his former employer for age discrimination in connection with
termination of his employment. Although the president of the
defendant corporation, George Bark, was the ultimate decisionmaker
regarding the hiring and firing of employees, Bark consulted one of
the company's senior vice-presidents, Fred W. Martin, prior to
firing the plaintiff. Martin allegedly told Bark that he "should
not discharge La Montagne until he had a younger man to replace
him." *La Montagne,* 750 F.2d at 1408 (emphasis supplied). That
statement clearly revealed a discriminatory animus on the part of
the declarant. The Seventh Circuit "nevertheless [found] that
Martin's statement to Bark is not substantial evidence to support
a finding of age discrimination." *Id.* at 1412.

> It is clear that Bark had full authority, as
> president of the Company, to discharge La Montagne.
> While he consulted with Martin and David [secretary-
> treasurer of the company] about his hiring and discharge
> decisions, there is no evidence that he needed their
> concurrence to act or that such decisions had to be
> joint. It is also clear that Bark alone decided to
> discharge La Montagne and that he alone carried out the
> decision. Thus the relevant inquiry is into Bark's
> motivation; to prevail, La Montagne must show that his
> age was a determining factor in Bark's decision to
> discharge him.

16

> Martin's statement to Bark shows that *Martin* wanted
> La Montagne's replacement to be a younger man. <u>But
> Martin's desires are not probative, and a reasonable jury
> could not infer from Martin's statement alone that Bark
> wanted to replace La Montagne with a younger man, still
> less that Bark discharged La Montagne because of his age.</u>

*Id.* at 1412 (emphasis supplied). *See also Simmons v. McGuffey
Nursing Home, Inc.,* 619 F.2d 369, 371 (5th Cir. 1980)[6] ("That a
[single] member of the Board wanted a younger man as [the
plaintiff's] replacement does not mean that [the plaintiff] was
terminated because of his age.").

It should be observed that, in *La Montagne,* the Seventh
Circuit placed little weight on the fact that the ultimate
decisionmaker (Bark) was aware of the discriminatory bias of the
individuals from whom he sought input in the decisionmaking
process.

Other cases holding that evidence of racial or ethnic bias by
non-decisionmakers is not probative of the decisionmaker's
intention, especially when the evidence of bigotry was unknown to
the decisionmaker, include the following: *Hong v. Children's
Memorial Hospital,* 993 F.2d 1257, 1266 (7th Cir. 1993), *cert.
denied,* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994)

---

[6] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

17

(finding evidence of supervisor's occasional use of slurs directed at plaintiff's national origin, when unrelated to the decisional process, insufficient to demonstrate that the employer relied on illegitimate criteria); *Cesaro v. Lakeville Community School District*, 953 F.2d 252, 254 (6th Cir. 1992), *cert. denied*, 506 U.S. 867, 113 S.Ct. 195, 121 L.Ed.2d 138 (1992) (ruling that superintendent's motivation is not "relevant inquiry" where school board did not rely on gender as a factor in its hiring decision); *Williams v. Mead Coated Board*, 836 F. Supp. 1552 (M.D. Ala. 1993), *aff'd*, 413 F.3d 668 (11th Cir. 1994) (finding no credible evidence that "any racially derogatory remarks [were] ... 'related to the selection of an employee for a particular promotion'") (citations omitted).

      **b.    Statements offered as admissions by party-opponent**

Rule 801(d)(2) of the Federal Rules of Evidence defines statements that are admissions by a party-opponent as "not hearsay." Issues commonly arise as plaintiffs proffer (in some form) the statements or alleged statements of supervisors, regarding the motivation of the company or of other supervisors, under subsections (C) and (D) of that rule. Subsection (C) refers to "a statement by a person authorized by the party to make a

18

statement concerning the subject." Fed. R. Evid. 801(d)(2)(C). Subsection (D) refers to "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).

Plaintiffs invoke subsection (D) more often, because that subsection opens the door of admissibility a bit wider, requiring a showing only that the subject of the statement was within the scope of the declarant's employment, not that the declarant in fact was authorized to speak on that particular issue. *See Woodman v. Haemonetics Corporation*, 51 F.3d 1087, 1094 (1st Cir. 1995) (comparing subsections (C) and (D) and determining that "Rule 801(d)(2)(D) does not contemplate ... that the statement be shown to have been made by the employee at the instance of her employer, ... but only that the declarant's statement concern matters within the scope of her agency or employment").[7]

---

[7] See also the Seventh Circuit's discussion in Nekolny v. Painter, 653 F.2d 1164, 1171 (7th Cir. 1981):

> Rule 801(d)(2)(C), unlike 801(d)(2)(D), requires that a statement be "by a person authorized by him to make a statement concerning the subject." Rule 801(d)(2)(D), however, says nothing about an agent having authority to make a statement on a particular subject. After the fact of the agency is established, Rule 801(d)(2)(D) requires only that the statement "concern a matter within the scope of (the) agency or employment."

19

That distinction, however, does not imply that the door of admissibility is completely ajar under subsection (D); rather, issues of whether a statement was made within the scope of a declarant's agency or employment, along with the double-hearsay problem[8] discussed *infra*, are the most common forces found to slam the door on a plaintiff's proffer. Both of these factors led the Eleventh Circuit to affirm the district court's exclusion of statements of two supervisors in *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453 (11th Cir. 1997).

In *Zaben*, plaintiffs argued statements by two lower-level supervisors, who did not supervise the plaintiffs, constituted direct evidence of age discrimination. One plaintiff alleged that those supervisors told him that "they [meaning higher officials at the company] was [sic] talking about getting rid of the older employees, ... and that they wanted younger employees to train them the way they wanted them." *Zaben*, 129 F.3d at 1455. The court found the statements were hearsay and ultimately affirmed the summary judgment in favor of defendant. Distinguishing cases from

---

[8] Rule 805 of the Federal Rules of Evidence provides that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." *See* United States v. Pendas-Martinez, 845 F.2d 938, 942-43 (11th Cir. 1988) (both levels of hearsay must be excepted from the hearsay rule).

20

other circuits,[9] the court emphasized that no evidence suggested

these lower-level supervisors had any authority to speak for the

company on personnel matters, and that the reported statements of

unidentified supervisors created a double-hearsay problem. *See id.*

at 1456-57.

    The Sixth Circuit Court of Appeals, in *Hill v. Spiegel, Inc.*,

708 F.2d 233 (6th Cir. 1983), reversed the district court's entry

_____

    [9] The court distinguished the cases based on the declarant's authority and
problems of double hearsay.

    The Seventh Circuit Court of Appeals has held that statements by the
    plaintiff's supervisor about "the attitude, intentions and/or policy
    of the higher-ups" in management were properly admitted into
    evidence. *See Hybert v. Hearst Corp.*, 900 F.2d 1050, 1053 (7th Cir.
    1990). Crucial to that decision, however, was the court's
    conclusion that the statements were a direct warning by the
    plaintiff's supervisor, himself a member of management, and that
    they were not simply a repetition of what others in management had
    told him. *Id.* Thus, the statements posed no "double hearsay"
    problem. *Id.*
        Similarly, the Third Circuit Court of Appeals has held that an
    employee may testify about statements made by his supervisor
    regarding company policy toward older employees. According to that
    court, "[w]here a supervisor is authorized to speak with
    subordinates about the employer's employment practices, a
    subordinate's account of an explanation of the supervisor's
    understanding regarding the criteria utilized by management in
    making decisions on hiring, firing, compensation, and the like is
    admissible against the employer." *Abrams v. Lightolier Inc.*, 50
    F.3d 1204, 1216 (3d Cir. 1995). The court found that there was no
    double hearsay problem because the supervisor's explanation, if
    offered in person by the supervisor, would not be subject to a
    hearsay objection. *Id.* In each of these cases, the supervisor's
    statements to their subordinates were found to have been made within
    the ordinary scope of their duties. Therefore, they constituted an
    admission by a party opponent which was not excludable as hearsay.

*Zaben*, 129 F.3d at 1456.

21

of judgment on a jury verdict for plaintiff, because the district

court erred in admitting statements under Rule 801(d)(2)(D). *See*

708 F.2d at 237. In that case, a former district manager of the

defendant testified on behalf of plaintiff, his former supervisor,

to conversations he had with several other employees concerning

plaintiff's discharge. The essence of this witness' testimony was

that three different managers told him plaintiff had been

discharged because of his age and income. On appeal, the defendant

persuaded the court that, because no evidence demonstrated that any

of the three declarants had any involvement in the decision to

discharge plaintiff, the statements of these declarants did not

concern "a matter within the scope of [their] agency" for purposes

of Rule 801(d)(2)(D). The court found the fact that the declarants

were "managers" carried no special import for the determination of

whether plaintiff's discharge was within the scope of their

employment. *See id.* While conceding it is not necessary to show

that the declarant had authority to make the statements at issue,

the court maintained that "it is necessary ... to show, to support

admissibility, that the content of [a] declarant's statement

concerned a matter within the scope of his agency." 708 F.2d at

237; *see also Valecko v. Sterling, Inc.*, 89 F.3d 837, 1996 WL

22

205592 at *3-4 (6th Cir. 1996) (unpublished opinion) (finding the fact that two of the statements were uttered by the plaintiff's then-supervisors was "insufficient, in itself, to establish that matters bearing upon plaintiff's termination were within the scope of their employment").

Statements of supervisors generally are admissible, however, where a plaintiff can show that official played some role in the decision-making process. See Zaben, 129 F.3d at 1456. Cases where statements were found to be within the scope of the declarants' agency or authority include Miles v. M.N.C. Corporation, 750 F.2d 867 (11th Cir. 1985). The court in Miles focused on the nature of the declarant's supervisory position when he uttered a racial slur, a slur that appellant argued was admissible and should not have been stricken from the record. The declarant was Assistant Superintendent in charge of employees when he made the statement at issue, and subsequently was promoted to Production Superintendent, a position traditionally in control of hiring and firing. Evidence from several sources indicated this supervisor "was closely involved in the hiring evaluations and decisions from the time he made the statement through and past [plaintiff's] tenure." Miles, 750 F.2d at 875. The court of appeals found the statement was made

23

by an agent about a matter within the scope of his employment and,
therefore, was admissible.  *Id.*

As the discussion of *Zaben, supra,* demonstrates, the double-
hearsay hurdle has felled many plaintiffs seeking admission of
statements under Rule 801(d)(2).  In *Evans v. McClain of Georgia,*
131 F.3d 957 (11th Cir. 1997), the Eleventh Circuit held plaintiff
had not presented direct evidence of discrimination despite the
purported statement by a representative of a local temporary
employment agency that it would not send black applicants to the
defendant company because that company did not want black employees
in office positions.   The court said "[t]he district court
correctly dismissed this evidence as 'not significantly probative'
because it was based on ... the hearsay statement of an
unidentified representative." 131 F.3d at 962.  *See also Carden v.
Westinghouse Electric Corp.,* 850 F.2d 996, 1002 (3d Cir. 1988)
(finding supervisor's statement to plaintiff that "they [presumably
meaning unidentified superiors of the supervisor at the company]
wanted a younger person" inadmissible as double hearsay "because
there was no basis for admitting the statement that 'they' made");
*Cedeck v. Hamiltonian Federal Savings & Loan Association,* 551 F.2d
1136 (8th Cir. 1977) (finding same).

24

Although statements may be admissible under Rule 801(d)(2), yet fail to establish direct evidence, see Zaben, 129 F.3d at 1456, the Evans court found no indication that the statement of an unidentified representative of the employment agency could be reduced to admissible evidence at trial. Evans, 131 F.3d at 962. Thus, that evidence could not defeat the motion for summary judgment. See id. (citing Pritchard v. Southern Co. Services, 92 F.3d 1130, 1135 (11th Cir.) (inadmissible hearsay cannot defeat a motion for summary judgment when it is not reducible to admissible form at trial), amended on reh'g, 102 F.3d 1118 (11th Cir. 1996)).

## 4. Bailey's allegations of direct evidence

### a. Termination

Generally, courts look to two factors when determining whether a comment has any probative value as to an employer's intent behind a given employment action: (1) who uttered the comment; and (2) the content and context of that comment. In essence, the comment must have been uttered by a decisionmaker involved in the challenged employment action to have any bearing at this stage of the analysis. See, e.g., Mauter v. The Hardy Corporation, 825 F.2d 1554, 1558 (11th Cir. 1987) (finding statements by company vice president "too attenuated" to present a genuine issue of material

25

fact even in pretext analysis where vice president "played no part in the decision to terminate the plaintiff"); *Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11th Cir. 1997) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."). Moreover, the comment must pertain to the challenged action, to the plaintiff, or to a situation involving the plaintiff, at least in some general sense. *See Carter*, 132 F.3d at 642 (finding no direct evidence of discrimination where statement "does not relate directly to the [challenged] decision"); *see also Enters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997) ("Evidence of discriminatory motives must, it is true, have some relationship with the employment decision in question.").

J. L. Bailey alleges that Jeff Lipscomb, the project superintendent, told him he was selected for the reduction in force because of his age. Bailey also alleges his foreman, Harold Oliver, confirmed this, telling him that Lipscomb wanted a younger work force. Both Lipscomb and Oliver deny making such statements.[10]

---

[10] Oliver admits that, during one of his several social visits to Bailey's home after the termination, he reluctantly agreed with Bailey that the reason FDI selected Bailey for the reduction in force was his age. *See* note 4 *supra.*

26

Bailey offers only his muddled deposition testimony[11] as evidence of those statements.

Addressing the alleged statements of Oliver first, this court finds Oliver was not a decisionmaker in the challenged employment decision, rendering his alleged statements insufficiently probative to constitute direct evidence of discrimination. Moreover, such allegations cannot be reduced to evidence admissible at trial. First, the statements are hearsay, *i.e.*, offered for the truth of the matter asserted, which Oliver flatly denies. Moreover, the hiring and firing of Bailey was not within the scope of Oliver's agency or employment such that the statement would be defined as "not hearsay" and admissible under Rule 801(d)(2)(C) or (D).

Lipscomb, on the other hand, had input in the challenged employment decision sufficient for this court to consider him a decisionmaker in light of *Miles, supra*. Because this court must view the evidence before it on summary judgment in a light most favorable to the non-movant, this court finds Bailey's allegations

---

[11] During his deposition, Bailey wavered on how Lipscomb had told him he was fired because of his age. First, Bailey alleged Lipscomb merely said he was the oldest employee in the cutting and baling area, in response to Bailey saying he was "next to the oldest." In the same answer he alleges Lipscomb said "I done checked with Leroy [Beard at Solutia], and we don't want you down there no more." Then, Bailey wavered on whether he had asked Lipscomb if he was being laid off because he was too old, or if Lipscomb had just told him so. (*See* Plaintiff's deposition, at 100-06.)

27

of statements uttered by Lipscomb create a genuine issue of material fact as to whether age was a motivating factor in defendant's decision to fire him.[12] *See*, *e.g.*, *Merritt v. Dillard Paper Company*, 120 F.3d 1181, 1189 (11th Cir. 1997); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

### b. Retaliation

Bailey alleges that Oliver told him Lipscomb would not allow Bailey to return to the facility, thereby precluding him from submitting an application for a vacancy. Bailey also alleges Oliver repeated to him another statement of Lipscomb: "F*** [plaintiff]. He wants to sue us and he's got a lawyer." Oliver denies making such statements. Lipscomb also denies making such statements. Thus, this court now must determine whether Bailey's allegations can be reduced to admissible evidence at trial, and, whether such evidence is sufficient to create a genuine issue of material fact and thereby defeat the motion for summary judgment. *See Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1135 (11th Cir.) (inadmissible hearsay cannot defeat a motion for summary

---

[12] The court notes that defendant may assert, under Spanier v. Morrison's Management Services, Inc., 822 F.2d 975, 979 n.3 (11th Cir. 1987), an affirmative defense that it would have made the same decision absent any discriminatory animus. Evidence supporting that defense includes Solutia selecting Bailey for termination from the cutting and baling area, as well as evidence of apparently misleading or false statements on his application for employment.

28

judgment when it is not reducible to admissible form at trial), *amended on reh'g*, 102 F.3d 1118 (11th Cir. 1996).

First, no evidentiary submission supports the allegation that Oliver informed Bailey that Lipscomb said he would not permit Bailey to return to the facility. Rather, this bare allegation appears only in plaintiff's memorandum of law, and it appears without citation to evidence.[13]

Second, Bailey's other allegation presents a problem of double hearsay. At best, Bailey's testimony can establish only that Oliver made the statement. Oliver's alleged statement (and therefore Bailey's testimony) may constitute direct evidence, however, only if Oliver's assertion was true: *i.e.,* only if Lipscomb actually said "F*** [plaintiff]. He wants to sue us and he's got a lawyer." Bailey offers nothing more to prove the truth of the matter Oliver (allegedly) asserted. Bailey cannot avail himself of the testimony of either Oliver or Lipscomb, because they both deny such statements. Bailey, therefore, must rely on Federal

---

[13] Plaintiff does not respond to defendant's assertion that this allegation was fabricated and alleged only in plaintiff's memorandum of law. (*See* Defendant's reply, at 1-2.) Furthermore, in its review of the parties' evidentiary submissions, this court found no reference to such allegation or statement.

29

Rule of Evidence 801(d)(2), and argue that Oliver's statement was an admission by a party-opponent.[14]

Rule 801(d)(2) defines statements that are admissions by a party-opponent as "not hearsay." Only subsections (C) and (D) of Rule 801(d)(2) arguably are applicable in this situation. Subsection (C) refers to "a statement by a person authorized by the party to make a statement concerning the subject." Fed. R. Evid. 801(d)(2)(C). Neither Bailey's allegations nor any other evidence before this court suggests that Oliver was authorized by the party-opponent, FDI (or even Lipscomb), to speak with Bailey concerning his prospects of obtaining a new position at FDI.

Subsection (D) refers to "a statement by the party's agent or servant <u>concerning a matter within the scope of the agency or employment</u>, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D) (emphasis supplied). Oliver was an agent or servant of FDI, but the scope of that agency or employment did not include matters concerning hiring or rehiring or, more

---

[14] Bailey addresses the hearsay issue in a footnote, saying only that "[s]tatements made to plaintiff by Oliver are admissible as statements against interest." (Plaintiff's memorandum of law, at 4 n.3.) Federal Rule of Evidence 804(b)(3) provides that statements against interest are an exception to the rule against hearsay "<u>if the declarant is unavailable as a witness</u>." (Emphasis supplied.) Bailey has made no showing that the declarant, Oliver, would be unavailable.

30

specifically, matters concerning what Lipscomb said regarding such decisions of FDI.

Thus, this court finds that Bailey's allegations constitute hearsay which he has failed to show is reducible to admissible evidence. Such hearsay cannot defeat a motion for summary judgment.

In addition, with regard to the alleged "retaliation," such statements do not concern a challenged decision of the employer, because FDI made no decision after Bailey engaged in the protected act of filing a charge of discrimination with the EEOC. By failing to submit an application for a vacant position, Bailey failed to present FDI with a decision with which FDI could manifest any retaliatory animus. Thus, even if this court were to consider the proffered hearsay, Bailey cannot escape or excuse the fact that he never applied for a position at FDI after he was fired, and such application was required for Bailey to be considered for a vacant position.[15]

---

[15] Perhaps Bailey could argue that the statement is probative because it put him on notice that his application would be futile. As discussed above, however, Oliver was not a decisionmaker and had no authority to discuss future employment with Bailey on behalf of FDI. Any "notice" from the alleged statement of Oliver was no more than "inquiry notice." In other words, for such an argument to have merit, Bailey needed to confirm the veracity of the alleged statement. Bailey made no effort to confirm the veracity of the alleged hearsay statements. Even assuming such argument has merit, the statements cannot constitute direct evidence. At best, the statements put Bailey on notice that someone may in the future discriminate against him as an applicant.

31

In summary, therefore, plaintiff presents no admissible direct evidence of retaliation. On this claim, therefore, the court will proceed with the analysis for circumstantial evidence.

**B.   Circumstantial Evidence of Retaliatory Discrimination**

To avoid summary judgment on an age discrimination claim, a plaintiff relying on circumstantial evidence must comply with the framework created for disparate treatment claims defined by the Supreme Court in a series of decisions rendered over a period of twenty years, beginning with *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The analytical framework developed by that trilogy has three steps. Although these cases involved discrimination claims under Title VII, a variant of the analysis applies to claims under the ADEA as well. *See Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992); *Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991). The goal of the three-step process is that of "progressively ... sharpen[ing] the inquiry into the elusive

32

factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (*quoting Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of the employer's intent to discriminate on the basis of age. The establishment of a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee," *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, and shifts to the employer the burden of producing legitimate, nondiscriminatory reasons for the contested employment action. *See id.; McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also Walker v. Mortham*, 158 F.3d 1177, 1185 n.10 (11th Cir. 1998) (discussing reasons why presentation of a prima facie case creates "a *presumption*, and not an *inference*, of intentional discrimination") (emphasis in original).

"If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the *McDonnell Douglas* framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Burdine*, 450 U.S. at 255 & n.10, 101

33

S.Ct. at 1094-95 & n.10), *cert. denied sum nom. Combs v. Meadowcraft Co.*, ___ U.S. ___, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." *Id.* (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). "[O]nce a plaintiff has ... put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of [summary judgment or] judgment as a matter of law." *Id.* at 1532, 1535.

> The *Combs* panel expressly rejected the suggestion, that had appeared in at least two of our prior decisions, that a defendant could succeed on a motion for summary judgment or a motion for judgment as a matter of law even though the plaintiff had plausibly discredited the defendant's proffered legitimate, nondiscriminatory reasons. *Id.* at 1533-35. Instead, in *Combs* we concluded that the decisions of the Supreme Court and our own circuit required the submission of a circumstantial case of discrimination to the jury as long as the plaintiff presents a *prima facie* case as well as plausible evidence that would permit a jury to disbelieve the employer's stated legitimate, non-discriminatory reasons. *Id.* at 1538.

34

*Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 658 n.6 (11th Cir. 1998).

### 1. Retaliation against Bailey

#### a. Prima facie case[16]

To establish a prima facie case of retaliation for conduct falling under the retaliation clause of the ADEA, a plaintiff must show (1) that he engaged in statutorily protected expression or activity, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression or activity. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998) (stating the elements of a Title VII retaliation claim and noting that the ADEA's retaliation clause is identical to the one in Title VII).

Bailey satisfies the first requirement in that he filed a charge of discrimination with the EEOC. Bailey cannot establish the second requirement, however, because he never applied for a vacant position with FDI. He relies on the statement allegedly made by Oliver, that Lipscomb would not permit Bailey to return to the facility. First, Oliver denies making such statement. Second,

---

[16] Bailey argues only that the alleged statements discussed above constitute direct evidence. He offers nothing regarding the burdens under the framework of analysis for circumstantial evidence. (*See* Plaintiff's memorandum of law.) Nevertheless, the court will consider everything properly in the record before it.

35

the only place in the record this court has found such allegation is in plaintiff's memorandum of law in opposition to the motion for summary judgment. (*See* Plaintiff's memorandum of law, at 2.) Third, this court finds that such a second-hand statement by a non-decisionmaker, if uttered, still would not excuse Bailey from submitting an application, or at least confirming the veracity of the statement. FDI made no decision affecting Bailey after terminating his employment. Consequently, Bailey cannot establish the second element of a prima facie case. Therefore, summary judgment is proper for Bailey's claim of retaliation.

## IV. CONCLUSION

Accordingly, defendant's motion is due to be **granted in part** and **denied in part**. Judgment will be entered in favor of defendant on plaintiff's claim for retaliation; plaintiff's claim challenging his termination under the ADEA remains pending trial. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this *2nd* day of August, 1999.

United States District Judge

36